ANNE E. LOPEZ          7609
Attorney General of Hawaiʻi

CHRISTOPHER J.I. LEONG  9662
CHRISTOPHER T. HAN      11311
Deputy Attorneys General
425 Queen Street
Honolulu, Hawaiʻi 96813
Telephone:  (808) 586-1180
Facsimile:   (808) 586-1205
Emails: Christopher.ji.leong@hawaii.gov
        Christopher.t.han@hawaii.gov

Attorneys for Defendant
ANNE E. LOPEZ in her official capacity as
ATTORNEY GENERAL OF THE STATE OF HAWAIʻI

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ABBVIE INC. (a Delaware corporation); ALLERGAN, INC. (a Delaware corporation); DURATA THERAPEUTICS, INC. (a Delaware corporation; ABBVIE PRODUCTS, LLC (a Georgia limited liability company); PHARMACYCLICS LLC (a Delaware limited liability company); ALLERGAN SALES, LLC (a Delaware limited liability company),    )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 1:25-cv-230-SASP-WRP<br><br>**DEFENDANT'S MOTION TO DISMISS; MEMORANDUM IN SUPPORT; DECLARATION OF CHRISTOPHER T. HAN; EXHIBITS A – N; CERTIFICATE OF COMPLIANCE** |
| Plaintiffs,    )<br>vs.    )<br>)<br>ANNE E. LOPEZ in her official capacity as ATTORNEY GENERAL OF THE STATE OF HAWAIʻI,    )<br>)<br>)<br>)<br>)<br>Defendant.    ) | Hearing Requested<br>Judge: Hon. Shanlyn A.S. Park<br>Trial: N/A<br>Re: Dkt. 1 |

## DEFENDANT'S MOTION TO DISMISS

Defendant Anne E. Lopez in her official capacity as Attorney General of the State of Hawai'i, by and through her undersigned attorneys, moves the Court for an order dismissing with prejudice Plaintiffs' Complaint, filed June 2, 2025, for failure to state a plausible claim upon which relief can be granted.   ECF No. 1.

This motion is brought pursuant to Fed. R. Civ. P. Rules 7 and 12(b)(6), and based on the memorandum in support, records and files herein, and the arguments at the hearings of this motion.  Pursuant to LR7.1(c), Defendant respectfully requests a hearing on this Motion to Dismiss, as oral argument may assist the Court in its determination.  This motion is made following the conference of counsel pursuant to LR7.8 which took place on July 3, 2025.

Dated: Honolulu, Hawai'i, August 4, 2025.

Respectfully submitted,

/s/ *Christopher T. Han*
CHRISTOPHER J.I. LEONG
CHRISTOPHER T. HAN
Department of the Attorney General
Commerce and Economic Development Division
425 Queen Street
Honolulu, HI 96813
Telephone: (808) 586-1180
Fax: (808) 586-1205
Email: Christopher.ji.leong@hawaii.gov
Christopher.t.Han@hawaii.gov

*Counsel for Defendant*

# TABLE OF CONTENTS

I.     INTRODUCTION…………………………………………………...…1

II.    BACKGROUND ........................................................................... 2

   A.  The Federal 340B Program........................................................2

   B.  The Replenishment Model..........................................................6

   C.  Hawaii's Act 143 (Formerly HB 712) ........................................8

III.   LEGAL STANDARD ................................................................. 9

IV.    ANALYSIS ................................................................................ 10

   A.  Act 143 is NOT preempted, as the 340B program is silent on the issue of
   delivery, and Act 143 does not stand as an obstacle to compliance with the
   340B program. ...................................................................... 10

      1.  Congress did not preempt the field .....................................11
      2.  Nothing prevents Plaintiffs from complying with both federal law and
      Act 143. .................................................................... 15

   B.  Act 143 does not enact an unconstitutional taking, as participation in the
   340B program is voluntary. ............................................... 19

   C.  Plaintiffs' Commerce Clause claim fails as a matter of law based on the
   legislative intent of Act 143 and the presumption against extraterritoriality . 22

      1.  Legislative intent demonstrates that Act 143 does not discriminate against
      interstate commerce. .................................................... 22
      2.  The presumption against extraterritoriality defeats Plaintiffs claims of
      effecting extraterritorial control. ................................... 24
      3.  Act 143 does not unduly burden interstate commerce......................... 26

   D.  Plaintiffs' Due Process Violation claim fails for a lack of vagueness..... 27

V.     CONCLUSION........................................................................ 29

## TABLE OF AUTHORITIES

**Cases**

*AbbVie Inc. v. Fitch*, No.
    2024 WL 3503965 (S.D. Miss. July 22, 2024).................................... 6, 13, 19, 20

*AbbVie Inc. v. Skrmetti*,
    2025 WL 1805271 (M.D. Tenn. June 30, 2025)......................... 15, 16, 21, 24, 28

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..............................................................9, 10

*Astrazenca Pharms. LP v. Bailey*,
    2025 WL 644285 (W.D. Mo. Feb. 27, 2025) ............................. 14, 19, 20, 21, 22

*AstraZeneca Pharms. LP v. Fitch*, 766 F. Supp. 3d 657 (S.D. Miss. 2024) ............13

*Boyce Motor Lines v. United States*, 342 U.S. 337 (1952) ....................................28

*Burditt v. U.S. Dep't of Health & Hum. Servs.*, 934 F.2d 1362 (5th Cir. 1991).......19

*Chun v. Bd. of Land & Nat. Res., Dep't of Land & Nat. Res.*,
    151 Haw. 374, 514 P.3d 981 (2022) ...............................................................7, 25

*Eli Lilly & Co. v. United States Dep't of Health & Hum. Servs.*,
    2021 WL 5039566 (S.D. Ind. Oct. 29, 2021) .......................................................21

*Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003) ....................29

*Flynt v. Bonta*, 131 F.4th 918 (9th Cir. 2025) ................................................. 22, 27

*Hill v. Colorado*, 530 U.S. 703 (2000)…………………………………………27

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996)........................................................10

*Nat'l Pork Producers Council v. Ross*, 598 U.S. 356 (2023) .......................... 23, 24

*Novartis Pharms. Corp. v. Fitch*, 738 F. Supp. 3d 737 (S.D. Miss. 2024).............13

*Novartis Pharms. Corp. v. Johnson*,
    102 F.4th 452 (D.C. Cir. 2024)...................................................................... *passim*

*Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978) ........................21

*Pereida v. Wilkinson*, 592 U.S. 224 (2021)................................................................27

*Pharm. Rsch. & Manufacturers of Am. v. Fitch,*
    2024 WL 3277365 (S.D. Miss. July 1, 2024) . ........................................ 13, 25, 28

*Pharm. Rsch. & Manufacturers of Am. v. McClain,*
    95 F.4th 1136 (8th Cir. 2024)......................................................... 4, 6, 13

*Pharm. Rsch. & Manufacturers of Am. v. Morrisey,*
    760 F. Supp. 3d 439 (S.D.W. Va. 2024)................................................ 1, 13, 16, 18

*Pharm. Rsch. & Manufacturers of Am. v. Murrill,*
    2024 WL 4361597 (W.D. La. Sept. 30, 2024)........................... 14, 19, 20, 28, 29

*Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644 (2003).................................10

*Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970)…………………………………26

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984) ................................................19

*Sanofi Aventis U.S. LLC v. United States Dep't of Health & Hum. Servs.,*
    58 F.4th 696 (3d Cir. 2023).......................................................1, 5, 10, 11, 15, 25

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ...........................................................9

*State v. McKnight*, 131 Hawai'i 379, 319. P.3d 298 (2013......................................25

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504 (2019) .................22

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489 (1982) ........27

*Wyeth v. Levine*, 555 U.S. 555 (2009).....................................................................10

**Statutes**

42 U.S.C. § 256b............................................................................ 3, 6, 12

**Other Authorities**

Pub. L. No. 102-585, § 602(a), 106 Stat. 4943 (1992 amendments to the Public
  Health Service Act) *codified at* 42 U.S.C. § 256b...................................................3
Pub. L. No. 78-410, 58 Stat. 682 *codified at* 42 USCA Ch. 6A ...............................3

**Regulations**

61 Fed. Reg. 43,549 (Aug. 23, 1996).....................................................................3, 7
74 Fed. Reg. 10,272 (Mar. 5, 2010) .....................................................................3, 7

## MEMORANDUM IN SUPPORT

## I.    INTRODUCTION

This lawsuit is part of a nationwide campaign by pharmaceutical manufacturers to hoard profits.[1]  To disguise their shameless money grab, Plaintiffs paint a disingenuous narrative by blaming the relationship between covered entities and contract pharmacies, as well as mischaracterizing an industry standard inventory management practice.  However, these accusations against the policy merits of Act 143 are nothing more than noise that fail to undermine the legality of the bill.

Plaintiffs assert four baseless claims under the Supremacy, Takings, Commerce, and Due Process Clauses, all of which fail as a matter of law. Plaintiffs' preemption claim is untenable based on multiple Courts' rulings recognizing the number of contract pharmacies as a delivery issue that Congress chose to remain silent on. [2]  Plaintiffs cannot plausibly maintain a Takings claim as voluntary participants in a government program.

---

[1] *See* Exhibit A (List of 340B lawsuits by pharmaceutical manufacturers across the country).

[2] *See Sanofi Aventis U.S. LLC v. United States Dep't of Health & Hum. Servs.*, 58 F.4th 696 (3d Cir. 2023); *Novartis Pharms. Corp. v. Johnson*, 102 F.4th 452 (D.C. Cir. 2024).

1

Plaintiffs' commerce claim is likewise without merit, as the legislative

record fails to show any discriminatory intent against out-of-state commerce.

Moreover, Plaintiffs cannot overcome the presumption against extraterritoriality to

sustain their arguments of undue burden on interstate commerce.

Plaintiffs' due process claim fails for a lack of vagueness, as business

persons of Plaintiffs' intelligence can understand the prohibitions in the measure.

Moreover, Plaintiffs fail to plausibly allege how Act 143 invites arbitrary and

discriminatory enforcement.

Given how all four claims fail as a matter of law, the Court must dismiss this

lawsuit with prejudice, as amendment would be futile.

## II.    BACKGROUND

### A. The Federal 340B Program[3]

To ensure both that low-income Americans have access to pharmaceuticals

and that the healthcare providers who treat them can continue to provide their

critical services, the federal government offers drug manufacturers a choice: if a

manufacturer wishes to sell their products to Medicare and Medicaid patients, the

manufacturer must participate in the 340B program.  *See Novartis*, 102 F.4th at

---

[3] The "340B" name is a reference to a section of the Public Health Service Act.
*See* Pub. L. No. 78-410, 58 Stat. 682 *codified at* 42 USCA Ch. 6A; *see also* Pub. L.
No. 102-585, § 602(a), 106 Stat. 4943 (1992 amendments to the Public Health
Service Act) *codified at* 42 U.S.C. § 256b.

455.  By participating in the 340B program, drug manufacturers agree to sell drugs at discounted prices to "covered entities"— certain health care providers that treat impoverished or otherwise underserved populations.  42 U.S.C. § 256b(a)(1), (a)(4).

The United States Department of Health and Human Services ("DHHS") and the Health Resources and Services Administration ("HRSA"), the federal entities that administer the 340B program, have issued interpretive guidance indicating that covered entities can contract with outside pharmacies (who are not covered entities) to distribute 340B drugs to their patients.  *See Notice Regarding 340B Drug Pricing Program-Contract Pharmacy Services*, 74 Fed. Reg. 10,272, 10,277 (Mar. 5, 2010) ("A covered entity that wishes to utilize contract pharmacy services to dispense section 340B outpatient drugs must have a written contract in place between itself and a specified pharmacy.").[4]

But it is still the covered entity, not the pharmacy, that participates in the 340B program.  As such, the covered entity must "purchase the drug, maintain title to the drug and assume responsibility for establishing its price[.]"  74 Fed. Reg. at 10,277.  In the end, the contract pharmacy is simply "an agent of the covered entity with the authorization to 'dispense 340B drugs to patients of the covered entity

---

[4] *See also Notice Regarding Section 602 of the Veterans Health Care Act of 1992*; *Contract Pharmacy Services*, 61 Fed. Reg. 43,549 (Aug. 23, 1996).

pursuant to a prescription.'"  *Pharm. Rsch. & Manufacturers of Am. v. McClain*, 95

F.4th 1136, 1142 (8th Cir. 2024).

Moreover, the orders for 340B drugs are placed with wholesale distributors,

as opposed to the drug manufacturers themselves.  *See McClain*, 95 F.4th at 1143

("The pharmaceutical distribution chain is complex, and contract pharmacies are

not the only third parties involved in getting 340B drugs from manufacturers to

patients. Pharmaceutical manufacturers sell their drugs to wholesalers who then

distribute and sell drugs to pharmacies or health care providers.").

Although there are variations, the following diagram demonstrates the

complexity of the transaction in question:


[Diagram on following page]



Flow of Funds and Product for a 340B Contract Pharmacy Network



See also https://www.amerisourcebergen.com/insights/pharmacies/how-are-retail-prescriptions-captured-into-the-340b-program.

While 340B does not dictate the price covered entities must charge patients for drugs received under the program, covered entities are not free to do whatever they like with the discounted drugs they receive. *See Sanofi,* 58 F.4th at 700 ("Though Section 340B's substantive requirements and restrictions are few, its compliance provisions are many."). Federal law expressly prohibits the resale or transfer—often called "diversion"—of 340B drugs to "a person who is not a

patient of [a covered] entity." 42 U.S.C. § 256b(a)(5)(B); *see McClain*, 95 F.4th at

1142 ("covered entities may not engage in diversion of covered outpatient drugs

through 'resell[ing] or otherwise transfer[ring]'" 340B drugs). Covered entities are

further prohibited from requesting or receiving "duplicate discounts or rebates"

that may be available for drugs obtained via 340B. 42 U.S.C. § 256b(a)(5)(A).

Failure to comply with these strictures subjects both drug manufacturers and

covered entities to punishment. Those that "fail to comply can be fined, and

covered entities can be kicked out of the program." *McClain*, 95 F.4th at 1142

(quoting *Sanofi*, 58 F.4th at 700). The statute provides two enforcement

mechanisms: "Both the Secretary of HHS and drug manufacturers are authorized

to audit covered entities to ensure compliance with the diversion and duplicate

rebate provisions." *Id.* (citing 42 U.S.C. § 256b(a)(5)(C)).

## B. The Replenishment Model

Replenishment inventory models are a commonplace practice in the

pharmaceutical world. *See AbbVie Inc. v. Fitch*, No. 1:24-CV-184-HSO-BWR,

2024 WL 3503965 at *14 (S.D. Miss. July 22, 2024). Prior guidance from the

HRSA reflects recognition of the practice as well. In its 1996 guidance, the HRSA

recognized that "[t]here is no requirement for a separate (physical) inventory for

drugs purchased at a 340B discount, because a separate data system will be used to

verify appropriate dispensing." 61 Fed. Reg. at 43,554.[5] The guidance goes on to

state:

> However, the requirement for a separate inventory of
> 340B drugs is unnecessary, because the covered entity is
> required to monitor dispensing and inventory records. In
> addition, these records are also subject to Department and
> manufacturer audits. ***A separate inventory is a wasteful
> concept with respect to time, space and money. Further,
> it provides little if any additional security, as a separate
> inventory only speaks to what is currently on the shelf
> and not what should be on the shelf.*** On the other hand,
> dispensing and other records will accurately indicate use
> of 340B drugs.

*Id.* (emphasis added).

The replenishment model generally follows a three-step process:  First, a

contract pharmacy dispenses a drug in a certain amount to a patient from its own

inventory.  Second, the 340B software notifies the covered entity and contract

pharmacy that a replenishment order for a dispensed drug may be placed with the

340B drug wholesaler under the covered entity's 340B account.  Generally, a single

dispense will not trigger a replenishment order; rather, the contract pharmacy or

third-party administrator will accrue dispenses towards a set amount prior to

placing a replacement order.  Third, the drug at issue is shipped to the contract

---

[5] While the 1996 guidance has been superseded by the 2010 Federal Register
publication, 74 Fed. Reg. 10,272, Courts have continued to reference the 1996
guidance to illustrate the HRSA's historical interpretation of the 340B statute. *See,
e.g.*, *Novartis*, 102 F.4th at 456-57.

pharmacy.  *See* Plaintiffs' Motion for Preliminary Injunction, Exhibit 7 (Dkt. 28),

¶¶ 5-11.  Covered entities are responsible for ensuring that appropriate safeguards

are in place, including internal audits and audits by the HRSA.  *See id.* at ¶ 12;

Exhibit H.

### C. Hawaii's Act 143 (Formerly HB 712)

On May 30, 2025, Governor Josh Green signed Act 143 (formerly H.B. 712)

into law.  The preamble of the Act plainly states that its purpose is to provide

patients in the State access to affordable medication through contact pharmacies,

the practice of which was being limited by drug manufacturers such as Plaintiffs.

*See* Exhibit B, 1-3.  The intent behind the measure is further reflected by the

extensive amount of testimony received on the measure and the various committee

reports as the measure passed through the Legislature.  *See* Exhibits C-G.

The operative provision at issue, § 2-2(a) provides as follows:

> (a) No manufacturer, or any agent or affiliate of a
> manufacturer, shall deny, restrict, or prohibit, either
> directly or indirectly, the acquisition of a 340B drug by,
> or shipping or delivery of a 340B drug to, a pharmacy
> that is under contract with a 340B covered entity and is
> authorized under the contract to receive and dispense
> 340B drugs on behalf of the 340B covered entity unless
> the receipt is prohibited by the United States Department
> of Health and Human Services.

Exhibit B, 5-6.

Act 143 provides for either a 340B covered entity or the attorney general to bring a *civil* action for violation of Act 143.  *See* Exhibit B, 7.  Act 143 does not provide for any criminal penalties.

Act 143 went into effect on July 1, 2025.  *Id*. at 10.

## III.   LEGAL STANDARD

Fed. R. Civ. P. ("FRCP") Rule l2(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted[.]"  To survive a Rule l2(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This tenet- that the court must accept as true all of the allegations contained in the complaint – "is inapplicable to legal conclusions."  *Id.*  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Factual allegations that only permit the

court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by FRCP Rule 8. *Iqbal*, 556 U.S. at 679.

## IV. ANALYSIS

### A. Act 143 is NOT preempted, as the 340B program is silent on the issue of delivery, and Act 143 does not stand as an obstacle to compliance with the 340B program.

The ultimate touchstone of preemption analysis is "the purpose of Congress." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996). As the U.S. Supreme Court has explained on numerous occasions, when Congress has "legislated . . . in a field which the States have traditionally occupied[,]" the analysis begins with "the assumption that the historic police powers of the States were not to be superseded" unless doing so was the "clear and manifest purpose of Congress." *Id*.; *see also Wyeth v. Levine*, 555 U.S. 555, 565 (2009). Furthermore, the U.S. Supreme Court has recognized that matters of public health have primarily, and historically, been matters of local concern. *See Medtronic*, 518 U.S. at 475 (citations omitted); *see also Pharm. Rsch. & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 666 (2003) (plurality opinion of Stevens, J.).

Given the Third and D.C. Circuit conclusions that Congress chose to remain silent on contract pharmacies, [6] Plaintiffs cannot plausibly maintain a preemption claim, whether it would be under field preemption or conflict preemption.

---

[6] *See Sanofi*, 58 F.4th 696; *Novartis*, 102 F.4th 452.

1.  <u>Congress did not preempt the field.</u>

The key factor for determining field preemption here is whether limiting the number of contract pharmacies constitutes a delivery or price issue, as Congress chose to remain silent on the issue of delivery.  *Id*.  As evidenced by the rulings discussed herein, ***the number of shipping destinations is a delivery issue***.

Plaintiffs' attempt to characterize the number of delivery sites as a price issue is untenable in the face of the Third and D.C. Circuit rulings.  Both cases involved challenges against DHHS and HRSA's attempt to compel drug manufacturers to deliver 340B drugs to an unlimited number of contract pharmacies.

In *Sanofi*, the Third Circuit explicitly found that the Section 340B statute is silent about delivery and contract pharmacies.  *See* 58 F.4th at 703 ("Nowhere does Section 340B mention contract pharmacies.").  In analyzing both the "offer" and "purchased by" language in the 340B statute, the Court found the delivery issue separate from these requirements.  *Id.* at 703-04 ("The 'purchased by' provision imposes only a price term for drug sales to covered entities, leaving all other terms blank").

In *Novartis*, the D.C. Circuit similarly held that Congress' silence on the issue of delivery permits private parties to act freely.  102 F.4th at 460 ("Statutory

11

silence implies that manufacturers may impose distribution conditions by contract,
not that they are prohibited from doing so.").

In overturning the DHHS' attempt to mandate manufacturers to ship 340B
drugs to an unlimited number of destinations, the rationale for both Circuit rulings
were the same:  DHHS cannot regulate the number of delivery sites, as Congress
chose to remain silent on the issue of delivery under the 340B program.  The
underlying basis for both rulings leads to the same undeniable conclusion: the
number of shipping sites is a delivery issue, and not a price issue.  If the number of
delivery sites truly was a pricing issue as alleged by Plaintiffs, Courts would not
have been able to prevent DHHS from regulating the issue.

A simpler analogy exists to demonstrate the distinction.  Take for example
Amazon Prime.  If Amazon were to suddenly impose a single destination shipping
policy based on allegations of abuse by its Prime members, does this policy affect
the price of the goods sold?  No.  The only price that changes is the shipping cost
borne by Amazon for its Prime members.  *See* 42 U.S.C. § 256b(a)(8) ("If a
covered entity obtains drugs directly from a manufacturer, the manufacturer shall
be responsible for the costs of distribution.").

Furthermore, Plaintiffs' attempt to distinguish this case from the growing
number of cases that are contrary to their position is nebulous at best.  *See* Exhibit
A.  As of the time of this writing, West Virginia's *Morrissey* decision stands as the

12

sole outlier in a slew of cases rejecting similar constitutional challenges to State legislation.[7]  760 F.Supp.3d 439.

In *McClain*, the Eight Circuit affirmed the summary judgment in favor of Arkansas' Act 1103, based on the finding that the statute was not preempted.  95 F.4th 1136, *cert denied* 145 S. Ct. 768 (2024).  Even if this Court were to accept Plaintiffs' allegations regarding the lack of agency and transfer of title as true, ***the covered entities' relationship with contract pharmacies is a 340B compliance issue, as opposed to a preemption issue***.  In fact, it would be improper for Act 143 to prescribe contractual arrangement requirements between covered entities and contract pharmacies when federal guidance already exists on the issue.

In *Fitch*, the Court denied AbbVie's motion for preliminary injunction against Mississippi's HB 728, rejecting the same arguments raised in this very Motion (i.e., preemption and takings).  2024 WL 3503965; *see also AstraZeneca Pharms. LP v. Fitch*, 766 F. Supp. 3d 657 (S.D. Miss. 2024) (denying motion for preliminary injunction on preemption grounds); *Novartis Pharms. Corp. v. Fitch*, 738 F. Supp. 3d 737 (S.D. Miss. 2024) (denying motion for preliminary injunction on preemption grounds); *Pharm. Rsch. & Manufacturers of Am. v. Fitch*, No. 1:24-CV-160-HSO-BWR, 2024 WL 3277365 (S.D. Miss. July 1, 2024) (denying motion for preliminary injunction on preemption, commerce, and due process grounds).

---

[7] For discussion on *Morrissey*, *see infra* at subsection (2).

13

In *Pharm. Rsch. & Manufacturers of Am. v. Murrill*, the Court granted
Louisiana's cross motion for summary judgment, rejecting the plaintiffs' various
claims, including preemption and takings.  No. 6:23-CV-00997, 2024 WL 4361597
at *9 (W.D. La. Sept. 30, 2024) ("Moreover, Act 358 arguably *advances* Congress'
objectives with respect to the Section 340B program." (emphasis in original)).
Notably, the *Murrill* Court rejected the argument that Louisiana's Act 358 intrudes
on DHHS' exclusive enforcement authority by pointing out that Louisiana's
enforcement mechanism "pertains solely to pharmaceutical companies' actions
toward pharmacies who enter into contracts with covered entities under the Section
340B program."  *Id*. at *8.

In *Astrazenca Pharms. LP v. Bailey*, the Western District of Missouri
rejected the preemption and takings claims.  No. 2:24-CV-04143-MDH, 2025 WL
644285 (W.D. Mo. Feb. 27, 2025).  Although the preemption claim centered
around federal patent laws, Missouri's operative provision imposed the same
restrictions on manufacturers, which the Court found not to regulate price.  *Id*. at
*2-3 ("Both the plain language of the statute as well as precedent within the Eighth
Circuit has established that statutes akin to S.B. 751 do not directly regulate the
pricing of 340B drugs as regulation of pricing is determined by the federal 340B
statute.").

14

Most recently, AbbVie's challenge was rejected in Tennessee on all four grounds raised in the Complaint for this matter (i.e., preemption, takings, vagueness, and commerce clause). *See AbbVie Inc. v. Skrmetti*, No. 3:25-CV-00519, 2025 WL 1805271 at *18 (M.D. Tenn. June 30, 2025) ("The Tennessee statute says nothing about price, and, even under the replenishment model, covered entities are the only entities entitled to the 340B discount.").

Therefore, State laws that prohibit manufacturers from restricting the number of contract pharmacies is a delivery issue that is not preempted as a matter of law. Given the Courts' explicit recognition that the issue of contract pharmacies remains an unregulated part of the 340B program, Plaintiffs' field preemption claim fails to warrant relief.

2. <u>Nothing prevents Plaintiffs from complying with both federal law and Act 143.</u>

Likewise, Plaintiffs' conflict preemption claim fails as a matter of law. The only impediment to Plaintiffs' complying with both federal law and Act 143 appears to be Plaintiffs' own financial interests, which is not a legally cognizable basis for relief under the Supremacy Clause. Again, if Courts have held that DHHS cannot enforce a limit on the number of contract pharmacies due to

15

Congress' silence on the issue,[8] a State's decision to address the gap cannot pose a conflict.

Even more telling is Plaintiffs' inability to identify any instance in which complying with Act 143 would pose a conflict with complying with the federal 340B program. The reason for this failure is plain in sight for all to see: Plaintiffs *can* comply with both laws, they simply *do not want to* for financial reasons. However, lost profits is not a legally proper basis to assert a conflict between federal and State law.

Plaintiffs' reliance on *Morrisey* is misplaced, as both the West Virginia statute and decision are inapposite in two key aspects. 760 F.Supp.3d 439. First, West Virginia's statute, S.B. 325, contained a no-audits provision,[9] which created an obstacle to complying with the 340B Program. *See id.* at 451-53 (holding that the no-audits provision constitutes obstacle preemption); *c.f. Skrmetti*, 2025 WL

---

[8] *See Sanofi*, 58 F.4th 696; *Novartis*, 102 F.4th 452.

[9] The no-audits provision provides as follows:

> A manufacturer, agent, or affiliate of such manufacturer shall not, either directly or indirectly, require a 340B entity to submit any claims or utilization data as a condition for allowing the acquisition of a 340B drug by, or delivery of a 340B drug to, a 340B entity unless the claims or utilization data sharing is required by the United States Department of Health and Human Services.

Exhibit N, 3.

1805271 at *14-17 (rejecting a preemption challenge for a similar anti-audit

provision).  On the other hand, § 2-2(b) of Hawaii's Act 143 ensures that

manufacturers can comply with the 340B Program by preserving their rights to

inquire about the necessary information.[10]

Second, applying the *Morrissey* Court's preemption ruling on West

Virginia's enforcement provision would be inappropriate, as the Court's analysis

on the replenishment model ignores the intent of the bill and the practical realities

of enforcement.  When examining the constitutionality of a state statute, Hawaii

Courts construe and interpret a statute "to avoid absurdity and give effect to the

legislature's intended purpose."  *Chun v. Bd. of Land & Nat. Res., Dep't of Land &*

*Nat. Res.*, 151 Haw. 374, 514 P.3d 981, *8 (2022) (citations omitted).

The purpose of legislation such as Hawaii's Act 143 is to address the

restrictions imposed by drug manufacturers that limit local hospitals' access to

contract pharmacies, as opposed to authorizing parties to engage in a pill-by-pill

accounting of every single 340B drug sold.[11]  *See* Exhibit B at 2-3.  In other words,

---

[10] Exhibit B, 6 ("Nothing in this section shall deny, restrict, or prohibit a
manufacturer from requiring a 340B covered entity to provide claims data for the
manufacturer's 340B drugs dispensed through a contract pharmacy arrangement;").

[11] Moreover, with Act 143's audit provision under § 2-2(b), manufacturers are
equipped to expediently resolve any suspected diversion or duplication issues from
the claims data.

***Act 143 prohibits manufacturers from limiting the number of contract***

***pharmacies used by covered entities, as opposed to the number of 340B drugs***

***sold to a specific contract pharmacy***.

Moreover, the practical application of Act 143 does not require Hawaii's

attorney general to take a "wait-and-see" approach that proved fatal for West

Virginia.  *See Morrisey*, 760 F.Supp.3d at 454-58.  Act 143 offers a simple choice

from manufacturers: either begin shipping 340B drugs to additional contract

pharmacies or face the consequences.  In other words, compliance with Act 143 is

an all-or-nothing affair.  By recognizing additional contract pharmacies, the

manufacturers will have complied with Act 143.  Any dispute as to the number of

eligible drugs is a federal issue that must be resolved pursuant to the appropriate

340B dispute resolution procedures.

Finally, even the *Morrisey* decision declined to rule on the merits of West

Virigina's no-restrictions clause and opted to address the provision based on

severability grounds, going as far as to question the validity of the claims.[12]

---

[12] *See* 760 F. Supp. 3d at 460 ("As for the remainder of the statute, including the
No-Restrictions Provision, Plaintiffs submit a host of arguments of various, and at
times dubious, merit ranging from an unconstitutional taking to a violation of
copyright law.").

18

**B. Act 143 does not enact an unconstitutional taking, as participation in the 340B program is voluntary.**

Plaintiffs' Takings claim is also without merit, as Plaintiffs' voluntary participation in the 340B program defeats the very argument.  When private parties "voluntarily accept responsibilities under" federal law because "they consider it in their best interest to do so," no taking occurs.  *Fitch*, 2024 WL 3503965 at *17 (quoting *Burditt v. U.S. Dep't of Health & Hum. Servs.*, 934 F.2d 1362, 1376 (5th Cir. 1991)).[13]  To date, Plaintiffs have yet to find a single Court that agrees with their argument.[14]

In *Fitch*, the Court rejected AbbVie's attempts to avoid the application of the voluntary participation doctrine through the distinction between federal and state obligations.  2024 WL 3503965 at *19.  The Court also found that because Mississippi's HB 728 rationally relates to a legitimate government interest by advancing public health, even if the bill were to effect a taking, it would not be a private taking, "but a taking that serves a public purpose."  *Id.* at *20 (quotations and citations omitted).

---

[13] *See also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1007 (1984) ("a voluntary submission of data by an applicant in exchange for the economic advantages of a registration can hardly be called a taking.").

[14] *See e.g.*, *Fitch,* 2024 WL 3503965 at *16-20; *Murrill*, 2024 WL 4361597 at *13-15; *Bailey*, 2025 WL 644285 at *4-6.

Hawaii's Act 143 likewise identifies a similar public purpose in its preamble. Exhibit B at 2 ("The legislature additionally finds that contract pharmacies are crucial in Hawaii, where geographic barriers make access to healthcare difficult for many residents."). Accordingly, Plaintiffs cannot deny the application of the voluntary participation doctrine, much less gloss over the public purpose plainly identified in Act 143.

In *Murrill*, the Court rejected the Takings claim and the plaintiffs' characterization of Louisiana's Act 358 as compelling direct, confiscatory sales to private pharmacies. 2024 WL 4361597 at *14 ("Act 358 only prevents pharmaceutical companies from restricting the ability of covered entities to contract with multiple pharmacies to dispense Section 340B drugs to their patients."). The Court also pointed out that a similar takings challenge against DHHS for the same number of contract pharmacies issue has proven to be unsuccessful under the voluntary participation doctrine. *Id*. at *15 (citing *Eli Lilly & Co. v. United States Dep't of Health & Hum. Servs.*, No. 121CV00081SEBMJD, 2021 WL 5039566 (S.D. Ind. Oct. 29, 2021)).

In *Bailey*, the Court outright rejected the Takings argument for failure to satisfy the elements under the *Penn Central* balancing test. 2025 WL 644285 at *5 (quoting *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 130-31 (1978)). Under the Penn Central balancing test, courts consider: (1) "the economic

20

impact of the regulation on the claimant," (2) "the extent to which the regulation

has interfered with distinct investment-backed expectations," and (3) "the character

of the government action." *Id*.

In finding that the plaintiff failed to meet the second element of the test, the

Court noted the following fatal flaw with the plaintiff's taking claim:

> Here, the regulatory regime in place when Plaintiff
> entered the 340B program was silent about delivery.
> States were free to change delivery and acquisition
> requirements regarding 340B drugs in their respective
> jurisdictions. This is consistent with the idea that the
> practice of pharmacy is an area traditionally left to state
> regulation. Plaintiff did not have a reasonable
> investment-backed expectation that states would not, at
> some point, deicide [*sic*] to change requirements of the
> 340B program that Congress had deliberately left silent
> in an area that is traditionally left to the states to regulate.
> As such, Plaintiff has not demonstrated a reasonable
> investment-backed expectation.

*Id.* at *6.  Likewise, the *Bailey* Court found that plaintiff did not satisfy the third

prong of the Penn Central test, as "the character of the government action does not

suggest a physical taking but merely adjusting the benefits and burdens of

economic life to promote the common good."  *Id*.

Lastly, the Court in *Skrmetti* rejected the Takings claim for similar reasons,

pointing out the rejections in the above-mentioned cases.  2025 WL 1805271 at

*19 ("[T]he State regulations on delivery do not amount to taking possession of

21

AbbVie's property or conveying it to a third party, and AbbVie's gripe with the whole system is that it does not like the volume of drugs being sold at the 340B discount price.").

As seen by these rulings, Plaintiffs can avoid selling discounted drugs by exercising a choice that has, and always will be, open: *by leaving the 340B program*. Act 143 does not compel Plaintiffs' participation in the federal 340B program. Plaintiffs only need to walk away from the riches to be gleamed from the 340B program, which was never a right, but rather a privilege.

### C. Plaintiffs' Commerce Clause claim fails as a matter of law based on the legislative intent of Act 143 and the presumption against extraterritoriality.

Plaintiffs claim that Act 143 violates the dormant Commerce Clause in three ways: (1) "by discriminating against interstate commerce," (2) by effecting extraterritorial control of commerce occurring entirely outside the boundaries of the state in question, and (3) "by unduly burdening interstate commerce." Complaint, Dkt. 1, 73, ¶ 163 (quoting *Flynt v. Bonta*, 131 F.4th 918, 925-26 (9th Cir. 2025)). All three theories lack merit and must accordingly be dismissed.

### 1. Legislative intent demonstrates that Act 143 does not discriminate against interstate commerce.

The dormant Commerce Clause primarily targets state laws that "discriminate[ ] against out-of-state goods or nonresident economic actors." *Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 518 (2019). In *Nat'l Pork*

*Producers Council v. Ross*, the U.S. Supreme Court clarified that the

"antidiscrimination principle lies at the very core of our dormant Commerce

Clause jurisprudence," meaning "the Commerce Clause prohibits the enforcement

of state laws driven by ... economic protectionism—that is, regulatory measures

designed to benefit in-state economic interests by burdening out-of-state

competitors."  598 U.S. 356, 369 (2023) (internal quotation marks and citations

omitted).

Here, Plaintiffs cannot plausibly argue that Act 143 discriminates against

interstate commerce based on the plain language of the bill.  While Act 143 may

impose burdens on manufacturers such as Plaintiffs, it does so without regard to

the geographic location of such manufacturers.[15]  Furthermore, pharmaceutical

manufacturers do not compete with covered entities or contract pharmacies; rather,

they are parties at different points in the supply chain.

The preamble of Act 143 also demonstrates that the intent of the measure is

to provide affordable access to healthcare for patients in the State, as opposed to

engaging in economic protectionism.  *See* Exhibit B, 1-3.  For example, the

Legislature found that "contract pharmacies are crucial in Hawaii," as this permits

hospitals to "ensure that patients in remote areas receive their prescribed

---

[15] Defendant recognizes that there are no pharmaceutical manufacturers based in
Hawaii, but the argument remains that Act 143's restrictions are not limited to out-
of-state entities.

medications without the need to travel long distances." *Id*. at 2.  Conversely, the

Legislature found that the restrictions imposed by manufacturers "not only limit a

patient's access to affordable medication," but could also "result in cutbacks to

essential health care programs." *Id.* at 3.

The testimony received for the measure likewise shows that the support for

the bill stemmed from a desire to expand access to healthcare services for the local

community, as opposed to protectionist interest against out-of-state competition.

*See generally* Exhibit C.

Plaintiffs cannot attribute discriminatory intent where there is none.

Accordingly, Plaintiffs' commerce claim fails to satisfy this first prong.

2. <u>The presumption against extraterritoriality defeats Plaintiffs' claims of effecting extraterritorial control.</u>

The U.S. Supreme Court has more recently declined to recognize an

"'almost per se' rule against state laws with 'extraterritorial effects." *Nat'l Pork*

*Prods.*, 598 U.S. at 373, 376; *see id.* at 371 (explaining that its prior decisions that

focused on the extraterritorial effect of challenged laws were nonetheless

motivated by the antidiscrimination principle).

Moreover, there is a presumption against extraterritoriality when interpreting

state statutes.  In *Skrmetti*, the District Court in Tennessee rejected AbbVie's

dormant Commerce Clause challenge by applying Tennessee's presumption against

extraterritoriality.  *See* 2025 WL 1805271 at *23-24.  In *Pharm. Rsch. &*

24

*Manufacturers of Am. v. Fitch*, the Court also rejected a similar claim that

Mississippi's state law impermissibly regulated out-of-state transactions by

applying the same presumption.  *See* 2024 WL 3277365 at *13 ("If not for this

presumption, every state law in every state would potentially need a disclaimer that

it only applies to in-state conduct, which bread-and-butter state laws often lack."

(citations omitted)).

Hawaii applies the same presumption against extraterritoriality in

interpreting its laws.  In *Chun v. Bd. of Land & Nat. Res., Dep't of Land & Nat.*

*Res.*, the Hawaii Supreme Court rejected the plaintiff's interpretation of a state

statute, which would have violated the dormant Commerce Clause.  *See* 151 Haw.

374 at *8, n. 13 (2022).  Instead, the Court construed the statute to apply only

where there was some nexus to the State, thereby opting to "[d]eviate from a literal

application of the language in order to avoid absurdity and give effect to the

legislature's intended purpose."  *Id.* (quoting *State v. McKnight*, 131 Hawaiʻi 379,

389, 319 P.3d 298, 308 (2013)).

Likewise here, the Court must apply this presumption to avoid such

absurdity.  The preamble of Act 143 explicitly identifies that the purpose of the bill

includes "[p]rohibiting drug manufacturers from denying, restricting, or

prohibiting the acquisition, shipping, or delivery of a 340B drug to a pharmacy

under contract with any 340B covered entity ***in the State***;"  Exhibit B, 3 (emphasis

added).  Failing to apply a nexus requirement here would be incongruous with the plainly stated intent of the measure.

Plaintiffs cannot overcome this presumption against extraterritoriality under Hawaii law.  As such, their claim under the second prong that Act 143 effects control on entirely out-of-state transactions fails as a matter of law.

3.  Act 143 does not unduly burden interstate commerce.

State laws that "regulat[e] even-handedly to effectuate a legitimate local public interest ... will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."  *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).  Plaintiffs here face a heavy burden: "the Supreme Court 'has not invalidated a law under Pike' in more than 30 years."  *Flynt*, 131 F.4th at 931 (citations and quotations omitted).

Here, Plaintiffs cannot deny the legitimate public interest that is plainly spelled out in the preamble of Act 143 (i.e., preserving access to affordable healthcare for rural residents).  *See* Exhibit B, 1-3.

Conversely, Plaintiffs' claims regarding alleged burdens on interstate commerce are dubious at best.  *See* Complaint, Dkt. 1, 78-79, ¶¶ 175-78.  Based on the presumption against extraterritoriality above, *see supra* section C.2, Plaintiffs' fears of a nationwide ban are unfounded.  Furthermore, Plaintiffs' claim of being subject to inconsistent legislation across the country is suspect, given that the

various state laws all target the same behavior: the manufacturer's restrictions on the number of contract pharmacies. As for Plaintiffs' repeated attacks on the efficacy of the measure, that is a policy call that has already been determined by the Legislature. *See Pereida v. Wilkinson*, 592 U.S. 224, 241 (2021) ("Our license to interpret statutes does not include the power to engage in such freewheeling judicial policymaking.").

Therefore, Plaintiffs have failed to plausibly allege that Act 143 unduly burdens interstate commerce under the third prong of the dormant Commerce Clause.

**D. Plaintiffs' Due Process Violation claim fails for a lack of vagueness.**

A statute can be impermissibly vague if it either (1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, or (2) authorizes or even encourages arbitrary and discriminatory enforcement. *See Hill v. Colorado*, 530 U.S. 703, 732 (2000) (citation omitted).

The void-for-vagueness doctrine applies less strictly to economic regulations "because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498–99 (1982). In that context, the standard asks whether a "business person of ordinary intelligence would understand" the conduct prohibited. *Id*. at 501. Moreover, the Fourteenth

27

Amendment does not require precision, and "no more than a reasonable degree of certainty can be demanded." *Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952).

Based on the standard above, Courts in Louisiana, Mississippi, and Tennessee have all rejected vagueness arguments against the respective state statutes. See *Murrill*, 2024 WL 4361597 at *10-12; *Pharm. Rsch. & Manufacturers of Am. v. Fitch*, 2024 WL 3277365 at *13-15; *Skrmetti* 2025 WL 1805271 at *20-22.

Here, Plaintiffs appear to attempt circumventing these decisions by attacking the definition of "340B drug," as opposed to the term "interfere." Complaint, Dkt. 1, 80-81, ¶¶ 183-84. Nevertheless, the claim still fails in the same manner, as Plaintiffs have reason to know what the prohibited conduct is.

Act 143 was enacted to prevent Plaintiffs from limiting the number of eligibile contract pharmacies, so Plaintiffs only need to accept orders from covered entitites to comply. The after-the-fact reconciliation of the number of drugs does not alter Plaintiffs' ability to comply. If it turns out that insufficient drugs were delivered, the covered entity can order more drugs. If Plaintiffs believe that excess 340B drugs were ordered and wish to dispute the number of eligible 340B drugs, they can exercise their audit and dispute resolution rights under the 340B program.

Plaintiffs have a reasonable opportunity to understand how to comply with the law, and they fail to demonstrate how Act 143 would be arbitrarily or discriminatorily enforced.

## V.    CONCLUSION

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam).

Here, Plaintiffs' claims all fail as a matter of law, so amendment would be futile.  Plaintiffs cannot allege any additional facts that would alter the legality of Act 143, nor assert any additional claims that warrant relief.  *See Murrill*, 2024 WL 4361597 at *12-13 (dismissing Contracts Clause claim).

Thus, this lawsuit must be dismissed with prejudice.

DATED: Honolulu, Hawai'i, August 4, 2025.

/s/ Christopher T. Han
CHRISTOPHER J.I. LEONG
CHRISTOPHER T. HAN

Attorneys for Defendant
ANNE E. LOPEZ, in her official capacity as
ATTORNEY GENERAL OF THE STATE
OF HAWAI'I

29