CLAIRE WONG BLACK        9645
**DENTONS US LLP**
1001 Bishop Street, Suite 1800
Honolulu, Hawai'i 96813
Telephone:  (808) 524-1800
E-Mail:  claire.black@dentons.com

*Counsel for Plaintiffs*
ABBVIE INC., ALLERGAN, INC.,
DURATA THERAPEUTICS, INC.,
ABBVIE PRODUCTS LLC,
PHARMACYCLICS LLC, AND
ALLERGAN SALES LLC

*Additional counsel listed on next page*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ABBVIE INC. (a Delaware corporation); ALLERGAN, INC. (a Delaware corporation); DURATA THERAPEUTICS, INC. (a Delaware corporation); ABBVIE PRODUCTS LLC (a Georgia limited liability company); PHARMACYCLICS LLC (a Delaware limited liability company); ALLERGAN SALES, LLC (a Delaware limited liability company), <br><br> *Plaintiffs*, <br><br> v. <br><br> ANNE E. LOPEZ, in her official capacity as ATTORNEY GENERAL OF THE STATE OF HAWAII, <br><br> *Defendant*. | Civil No. 1:25-cv-00230-SASP-WRP <br><br> **PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** <br><br> Judge: Hon. Judge Shanlyn A. S. Park |

MATTHEW S. OWEN, P.C., *pro hac vice*
MEREDITH M. POHL, *pro hac vice*
**KIRKLAND & ELLIS LLP**
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  (202) 389-5000
E-mail:  matt.owen@kirkland.com
          meredith.pohl@kirkland.com

*Pro Hac Vice Counsel for Plaintiffs*
ABBVIE INC., ALLERGAN, INC.,
DURATA THERAPEUTICS, INC.,
ABBVIE PRODUCTS LLC,
PHARMACYCLICS LLC, AND
ALLERGAN SALES LLC

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................. 2

    A.  The 340B Pricing Program. ................................................................... 2

    B.  Contract Pharmacies. ............................................................................ 5

    C.  The Hawaii Law. ................................................................................... 7

LEGAL STANDARD ......................................................................................... 8

ARGUMENT ...................................................................................................... 9

I.    ACT 143 IS PREEMPTED. ....................................................................... 9

    A.  Because Act 143 Regulates Price, It Is Field Preempted. .................... 9

    B.  Act 143 Is Conflict Preempted. ......................................................... 13

        1.  Act 143 Expands Transactions Beyond Those Required Under the Federal 340B Program. ......................................................................... 13

        2.  Act 143 Sets Up a Conflicting Enforcement Scheme. .................. 15

II.   ACT 143 CONSTITUTES AN UNCONSTITUTIONAL TAKING. ........ 17

    A.  Act 143's Compelled A-To-B Transfer of Property Constitutes a Per Se Physical Taking. ................................................................................. 17

    B.  The Voluntary Participation Doctrine Does Not Apply. ..................... 19

    C.  Although the Regulatory-Takings Doctrine Does Not Apply, Even If It Did, AbbVie's Allegations Are Sufficient. ............................................... 21

III.  ACT 143 VIOLATES THE DORMANT COMMERCE CLAUSE. ......... 22

IV.  ACT 143 IS UNCONSTITUTIONALLY VAGUE. ................................ 26

CONCLUSION .................................................................................................. 27

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. United States,*
567 U.S. 387 (2012)................................................................................14

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...........................................................................8, 22

*Astra USA, Inc. v. Santa Clara Cnty., Cal.,*
563 U.S. 110 (2011)........................................................................*passim*

*AstraZeneca Pharms. LP v. Becerra,*
543 F. Supp. 3d 47 (D. Del. 2021)....................................................3, 13

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)..................................................................................8

*Buckman Co. v. Plaintiffs' Legal Comm.,*
531 U.S. 341 (2001).........................................................................15, 16

*Cedar Point Nursery v. Hassid,*
594 U.S. 139 (2021)................................................................................17

*Crosby v. Nat'l Foreign Trade Council,*
530 U.S. 363 (2000).........................................................................13, 15

*Dep't of Revenue of Ky. v. Davis,*
553 U.S. 328 (2008)................................................................................24

*Healy v. Beer Inst.,*
491 U.S. 324 (1989)................................................................................24

*Horne v. Dept' of Agric.,*
576 U.S. 350 (2015).........................................................................18, 21

*Kelo v. City of New London, Conn.,*
545 U.S. 469 (2005)................................................................................19

*Loretto v. Teleprompter Manhattan CATV Corp.,*
458 U.S. 419 (1982)................................................................................21

*Nat'l Pork Producers Council v. Ross*,
  598 U.S. 356 (2023)..................................................................22, 23

*Novartis Pharms. Corp. v. Bailey*,
  2025 WL 489881 (W.D. Mo. Feb. 13, 2025) ....................................25

*Novartis Pharms. Corp. v. Johnson*,
  102 F.4th 452 (D.C. Cir. 2024)...............................................*passim*

*Penn Central Transp. Corp. v. City of New York*,
  438 U.S. 104 (1978)........................................................................21

*PhRMA v. Bailey*,
  2025 WL 644281 (W.D. Mo. Feb. 27, 2025) ....................................25

*PhRMA v. McClain*,
  95 F.4th 1136 (8th Cir. 2024) ...............................................12, 17

*PhRMA v. Morrisey*,
  760 F. Supp. 3d 439 (S.D. W. Va. 2024)..................................10, 16

*Rapanos v. United States*,
  547 U.S. 715 (2006)........................................................................14

*Sam Francis Found. v. Christies, Inc.*,
  784 F.3d 1320 (9th Cir. 2015) ......................................................24

*Sanofi Aventis U.S. LLC v. U.S. Dep't of Health & Hum. Servs.*,
  58 F.4th 696 (3d Cir. 2023) ..............................................7, 11, 18

*United States v. Davis*,
  588 U.S. 445 (2019)........................................................................26

*United States v. Kilbride*,
  584 F.3d 1240 (9th Cir. 2009) ......................................................26

*United States v. Williams*,
  553 U.S. 285 (2008)........................................................................26

*Valancourt Books, LLC v. Garland*,
  82 F.4th 1222 (D.C. Cir. 2023).....................................................20

*Virginia Hosp. & Healthcare Ass'n v. Roberts*,
  671 F. Supp. 3d 633 (E.D. Va. 2023) ...................................................20

*Wisconsin Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*,
  475 U.S. 282 (1986)...........................................................................15

*Wos v. E.M.A. ex rel. Johnson*,
  568 U.S. 627 (2013)...........................................................................11

**Statutes**

42 U.S.C. § 256b ......................................................................................2

42 U.S.C. § 256b(a) ..........................................................................*passim*

42 U.S.C. § 256b(d) ................................................................................17

42 U.S.C. § 1396r-8(a) .......................................................................3, 20

Ark. Code Ann. § 23-92-604(c) .............................................................12

Haw. Rev. Stat. § 328-112 .....................................................................24

Haw. Rev. Stat. § 461-1 ..........................................................................24

**Regulations**

42 C.F.R. § 10.21 .....................................................................4, 15, 16, 17

61 Fed. Reg. 43,549 (Aug. 23, 1996) .......................................................5

75 Fed. Reg. 10,272 (Mar. 5, 2010).........................................................5

89 Fed. Reg. 28,643 (Apr. 19, 2024) .................................................4, 17

## INTRODUCTION

AbbVie sells its life saving medicines to hospitals and pharmacies across the Nation and in Hawaii. Millions of those sales occur at substantial discounts—comprising a fraction of the prevailing market price—often as low as one penny per unit of drug. AbbVie makes those penny-priced sales on an unlimited basis to eligible providers that participate in the 340B Program. This lawsuit is not about patient access to those discounts. Rather, this lawsuit is about an escalating effort by for-profit retail pharmacies to infiltrate the 340B Program and capture the savings that should be flowing to patients. And it is about the Hawaii legislature's decision to approve and protect that arbitrage by force of law.

Hawaii's Act 143 compels pharmaceutical manufacturers like AbbVie to transfer their drugs to retail pharmacies that contract with the providers eligible for 340B pricing. In a typical arrangement, those contract pharmacies then access AbbVie's medicines at the 340B price, merge the product into the pharmacy's general inventory, and dispense it to the pharmacy's customers at retail prices. While patients do not benefit from the discounts, the pharmacies keep a cut of the profits for themselves and distribute the little remainder to their for-profit administrative partners and then to the providers that are actually eligible for the discount. What started as a benefit program for low-income providers is transformed into a highly complicated corporate arbitrage scheme.

It should not come as a surprise that such an unprecedented regime offends the Constitution multiple times over.  From the start, Act 143 violates the Supremacy Clause because it expands AbbVie's obligations under the exclusively federal 340B Program and eliminates rights that the Program intended to preserve.  Act 143 also erects a parallel, state enforcement scheme for those newfangled obligations—an arrangement similar to one the Supreme Court has already rejected.  *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 563 U.S. 110, 120–21 (2011).  It also constitutes a taking under the Fifth Amendment because it affirmatively compels manufacturers to transfer their drugs at bargain-bin prices to for-profit contract pharmacies.  And, because Act 143 prejudices out-of-state manufacturers in favor of in-state for-profit pharmacies and covered entities, it offends the Dormant Commerce Clause.  Finally, Act 143 offends the Due Process Clause's requirement that statutes not be unduly vague.

The motion to dismiss should be denied.

## BACKGROUND

### A.    The 340B Pricing Program.

In 1992, Congress enacted Section 340B of the federal Public Health Service Act, establishing the "340B Program."  *See* 42 U.S.C. § 256b.  The 340B Program works as follows: In exchange for participation in federal Medicaid and Medicare programs, the statute requires manufacturers to "offer" their products to each

2

"covered entity … for purchase at or below the applicable ceiling price." 42 U.S.C.

§ 256b(a)(1). The "ceiling price" is set by a statutory formula and results in severe

discounts, ranging from 23.1–99.9% of the average market price for a given drug.

Accordingly, manufacturers often sell their medicine for as little as one penny per

unit. Compl. ¶ 39.

"Covered entities" include, among others, federally qualified health centers

and rural hospitals. 42 U.S.C. § 1396r-8(a)(5)(B); 42 U.S.C. § 256b(a)(4). The

statutorily defined list does not include contract pharmacies or any for-profit entity.

42 U.S.C. § 256b(a)(4). Nor does the statute include any provision authorizing

covered entities to purchase drugs and dispense them through commercial

pharmacies. *See AstraZeneca Pharms. LP v. Becerra*, 543 F. Supp. 3d 47, 60 (D.

Del. 2021). Manufacturers solidify their promise to offer the 340B price to covered

entities by signing a "Pharmaceutical Pricing Agreement" ("PPA") with the United

States Department of Health & Human Services ("HHS"). Compl. ¶ 40; 42 U.S.C.

§ 256b(a)(1).

The 340B statute contains guardrails to prevent abuse. First, it prohibits

covered entities from "resell[ing] or otherwise transfer[ing]" drugs they purchased

at a discount to anyone who is not a patient of the entity—called "diversion." 42

U.S.C. § 256b(a)(5)(B). And second, covered entities may not request a Medicaid

rebate on a unit of drug they purchased at a 340B discount—a forbidden "duplicate

discount." *Id.* § 256b(a)(5)(A)(i). Congress vested HHS and its subagency, the Health Resources and Services Administration ("HRSA"), with exclusive authority to enforce and administer the 340B Program through audits and a federal Administrative Dispute Resolution ("ADR"). Compl. ¶¶ 49–50; *see also Astra*, 563 U.S. at 120–21.

HRSA has been active in orchestrating 340B enforcement. It recently issued a final rule detailing the congressionally prescribed 340B ADR process. *See* 89 Fed. Reg. 28,643 (Apr. 19, 2024). Under the rule, a "'340B ADR Panel' within HRSA is tasked with resolving not only disputes about drug prices but also 'claims that a manufacturer has limited the covered entity's ability to purchase covered outpatient drugs at or below the 340B ceiling price'—the exact issue Act 143 seeks to address." Compl. ¶ 49; *see also* 89 Fed. Reg. at 28,644 ("[T]he 340B Program is related to drug pricing and ***drug distribution***." (emphasis added)); *see also* 42 C.F.R. § 10.21(a)(1).

Undoubtedly, this authority is exclusive: The Supreme Court has explained that by vesting enforcement authority solely in HHS, Congress impliedly withheld from covered entities a private right of action to enforce the 340B Program's requirements against manufacturers. *Astra*, 563 U.S. at 120–21. Auxiliary enforcement mechanisms beyond those contemplated in the statute would

4

"undermine the agency's efforts to administer both Medicaid and § 340B harmoniously and on a uniform, nationwide basis." *Id.*

### B.    Contract Pharmacies.

In 1996, HRSA issued non-binding guidance suggesting covered entities lacking an in-house dispensing pharmacy should be permitted to contract with a ***single*** pharmacy to dispense 340B-priced drugs. 61 Fed. Reg. 43,549, 43,550–55 (Aug. 23, 1996). To avoid unlawful diversion, HRSA assumed the covered entity would maintain title to drugs and the pharmacy would remain an agent of the covered entity. *Id.*

The status quo changed in 2010. HRSA purported to permit ***all*** covered entities—even those with their own in-house pharmacy—to contract with an ***unlimited*** number of contract pharmacies. 75 Fed. Reg. 10,272, 10,273 (Mar. 5, 2010). Consequently, covered entities' use of contract pharmacies surged by more than ***12,000 percent***. Compl. ¶ 57. That explosion has been driven by the prospect of sharing in the outsized profit margins on 340B-priced drugs. *Id.* Commercial pharmacies—often multi-billion-dollar companies like CVS and Walgreens— generate significant profits by sharing in the "spread" from selling 340B-priced drugs at full or higher prices to customers and/or seeking full commercial reimbursement from insurance plans. *Id.* ¶¶ 60, 71.

Today, most contract pharmacies operate under what is known as the "replenishment model." *Id.* ¶ 63. Under this model, the contract pharmacy fills all prescriptions using its own drug inventory (co-mingled drugs purchased at both the ordinary price and 340B price) to all individuals at the point of sale, irrespective of whether they are a covered entity's patient. Compl. ¶ 62–64. The pharmacy does not determine at the point-of-purchase whether the individual is eligible for the 340B discount—nor would that matter to the patient, since it would not impact their price. *Id.* ¶ 66. Later, the pharmacy (with the help of its for-profit "third-party administrator") determines through a black-box algorithm which dispenses ***may*** have been 340B eligible. *Id.* An order is then placed for additional quantities of that drug at the 340B price for the contract pharmacy. *Id.* ¶¶ 64, 70. Once the contract pharmacy receives the replenishment order, the 340B-priced drugs are "placed on the shelf … and may be dispensed to any subsequent patient"—340B or not. *Id.* at ¶ 65.

Importantly, contract pharmacies often take title to the 340B-priced drugs, and do not maintain an agency relationship with the covered entities. Compl. ¶ 70. Though covered entities and commercial pharmacies "reap windfalls" from this process, uninsured and underinsured patients do not benefit. *Id.* ¶ 75; *Novartis Pharms. Corp. v. Johnson,* 102 F.4th 452, 457–58 (D.C. Cir. 2024) (explaining that the covered entity, pharmacy, and third-party administrator split "the spread between

6

the discounted price and the higher insurance reimbursement rate," so each "has a financial incentive to catalog as many prescriptions as possible as eligible for the discount").

In 2020, drug manufacturers began adopting policies to restore the 340B Program's integrity. AbbVie's current policy continues to offer covered entities unlimited 340B-priced drugs at or below the ceiling price, but AbbVie will not provide discounted drugs to unlimited, third-party contract pharmacies that serve hospital-type covered entities (although those pharmacies can always purchase AbbVie's drugs at ordinary prices). *Id*. ¶¶ 86–88. Instead, consistent with the 1996 Guidelines, AbbVie takes 340B orders for direct delivery to a covered entity's in-house pharmacy or one contract pharmacy located within 40 miles of the covered entity if the covered entity does not have an in-house pharmacy. *Id.* ¶ 87. Courts of Appeals have upheld manufacturers' contract pharmacy policies as lawful and consistent with the 340B statute, finding manufacturers have the right to impose reasonable conditions on their offers under federal law. *Id*. ¶ 90; *see also Sanofi Aventis U.S. LLC v. U.S. Dep't of Health & Hum. Servs.*, 58 F.4th 696, 703–04 (3d Cir. 2023); *Novartis*, 102 F.4th at 460–61.

## C.    The Hawaii Law.

Act 143 seeks to impose on manufacturers what the federal government could not. It provides, "No manufacturer … shall deny, restrict, or prohibit, either directly

7

or indirectly, the acquisition of a 340B drug by, or shipping or delivery of a 340B drug to, a pharmacy that is under contract with a 340B covered entity and is authorized under the contract to receive and dispense 340B drugs on behalf of the 340B covered entity … ." *See* Act 143 § 2-2(a).  Act 143 defines "340B drug" as "a prescription drug that is purchased by a 340B covered entity through the federal 340B drug pricing program … and is dispensed by a pharmacy." *See* Act 143 § 2-1.

Despite arguing that "Act 143 does not provide for any criminal penalties," the Attorney General could impose criminal penalties.  Mot. at 9; Act 143 § 2-4(b).  Act 143 provides that if a manufacturer violates section -2, "[t]he penalties provided in this section shall be cumulative to the remedies or penalties available under ***all other laws of the State***."  Act 143 § 2-4(b) (emphasis added).  This broad language leaves open the possibility of criminal enforcement.

## LEGAL STANDARD

A motion to dismiss tests the legal sufficiency of the complaint, not its factual merits.  At this stage, a district court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Dismissal is only appropriate if the plaintiff has failed to state a claim that is "plausible on its face."  *Twombly*, 550 U.S. at 570; *id.* at 556 ("[A] well-pleaded

complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'").

## ARGUMENT

### I.    ACT 143 IS PREEMPTED.

Act 143 is both field and conflict preempted.  ***First***, the State law is field preempted because the 340B statute establishes a comprehensive and exclusive set of rights and obligations for manufacturers.  And States impermissibly invade that field when they attempt to alter those rights and obligations.  ***Second***, the State law is conflict preempted because it expands manufacturers obligations under the 340B Program and establishes an overlapping enforcement scheme for disputes that reside in the sole province of the HHS.  The Attorney General's arguments to the contrary fail for many reasons, but principally because she mistakenly characterizes Act 143 as a law regulating the delivery of drugs already sold, rather than one forcing a sale in the first instance.

### A. Because Act 143 Regulates Price, It Is Field Preempted.

The Attorney General cannot evade field preemption by attempting to recharacterize Act 143 as a law about delivery alone rather than delivery at a particular price.  *Contra* Mot. at 11.  The very legislative history the Attorney General relies upon reflects the Department of the Attorney General commenting that Act 143 "regulates commerce and prescription drug ***pricing*** ..."  ECF No. 26-6, at 3 (emphasis added).  The plain text of the law confirms the same.  It provides that

AbbVie may not "prohibit" the "acquisition of a 340B drug by … a pharmacy that is under contract with a 340B covered entity[.]" Act 143 § 2-2(a). And a "340B drug" is one "purchased by a 340B covered entity through the federal 340B drug pricing program." Act 143 § 2-1. The defining feature of the law, then, is the ***price*** at which delivery must occur. The Attorney General's focus on "the number of delivery sites" understates the practical effects of Act 143 and the realities of the drug distribution supply chain. Mot. at 11. Act 143 does not change whether or where contract pharmacies may purchase AbbVie's drugs—it changes whether those pharmacies can access AbbVie's drugs at the 340B price. *See* ECF No. 16-1, E. Scheidler Decl. ¶ 7(b). AbbVie remains happy to supply those same pharmacies with drugs at ordinary, commercial prices—a fact no one disputes.

This commonsense reading of the law is what led another federal district court to describe a similar state law as regulating "delivery ***at a given price***, not delivery ***per se***." *PhRMA v. Morrisey*, 760 F. Supp. 3d 439, 455 (S.D. W. Va. 2024) (enjoining a similar state law, in part on the basis that the state statute was not really about delivery). Because covered entities and contract pharmacies can always access AbbVie's drugs, "[t]he question is only about ***what price the pharmacy and the covered entity will pay the manufacturer*** for the replenished drug upon distribution." *Id.* (emphasis added).

"Pre-emption is not a matter of semantics" and thus "requires consideration of what the state law in fact does, not how the litigant might choose to describe it." *Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 636-37 (2013).  Act 143 ***in fact*** compels AbbVie to transfers its drugs to contract pharmacies ***at a particular price***. The bill expressly notes that "current [contract pharmacy] restrictions imposed by drug manufacturers" threaten "financial savings"—not any type of distribution per se.  Act 143, § 1.  If Act 143 is about "delivery" alone, there would be no "financial savings" at stake.

None of the Attorney General's cited cases move the needle.  The Attorney General's argument that *Sanofi* and *Novartis* left the door open for states to regulate contract pharmacies is incorrect.  In *Sanofi*, the Third Circuit endorsed manufacturer policies that limit contract-pharmacies, emphasizing that Congress intentionally "chose not to" impose contract-pharmacy obligations on manufacturers.  *Sanofi*, 58 F.4th at 703–07; *see id.* at 704 ("[Congress] had in mind one-to-one transactions between a covered entity and a drug maker without mixing in a plethora of pharmacies.").   And in *Novartis*, the Court concluded that the 340B statute's "silence" on contract pharmacies "preserves—rather than abrogates" the ability of manufacturers to adopt contract-pharmacy limitations.  *Novartis*, 102 F.4th at 460.[1]

---

[1]   The Eighth Circuit's decision in *McClain* is similarly inapposite because it rested on factual assumptions contrary to AbbVie's allegations.  AbbVie alleges that contract pharmacies do not maintain agency relationships with covered entities

In other words, the "silence" in the 340B statute "speaks" by carving out authority for manufacturers to include reasonable conditions on their offers.

Hawaii's Amazon Prime example further misses the mark.  *See* Mot. at 12. To make that analogy accurate, the details would have to change.  Imagine Amazon offered severely discounted prices on its goods to **_Prime_** members (even down to a single penny) but offered ordinary commercial prices to all other purchasers.  Now imagine that Amazon discovered its Prime members began ordering goods for "delivery" to hundreds of locations across the country, many hundreds of miles from the Prime member's home.  After investigation, Amazon discovered these Prime members were allowing **_non-members_** to purchase goods using the member's account at the Prime discount, sell them for a profit, then share the revenue.  In response, Amazon adopted a policy, **_offering_** Prime members discounted prices **_if_** the member agreed to ship goods to only one additional shipping address.  And after, Hawaii passed a law requiring Amazon to provide its goods to unlimited addresses, **_at the Prime price_**.  That is the effect of Act 143—it's about price.

---

and that covered entities do not retain title to the 340B drugs.  *See* Compl. ¶¶ 56, 65; *see PhRMA v. McClain*, 95 F.4th 1136, 1142 (8th Cir. 2024).  Neither did the *McClain* court consider the precise statutory text that Hawaii uses.  *Compare* ARK. CODE ANN. § 23-92-604(c) *with* Hawaii Act 143.

## B. Act 143 Is Conflict Preempted.

Conflict preemption occurs where "the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372–73 (2000) (alterations accepted). Here, Act 143 conflicts with federal law by expanding manufacturers obligations under the federal 340B program and creating a conflicting enforcement scheme.

### 1. *Act 143 Expands Transactions Beyond Those Required Under the Federal 340B Program.*

Act 143 conflicts with the 340B statute by compelling the sale of 340B priced drugs on terms federal law does not require and thus inflating manufacturer obligations under the Program. That obstructs the ***full*** purpose of Congress in the 340B Program, which is to compel manufacturers to provide discounts to certain government-approved providers while not making the Program so onerous that it forces manufacturers to withdraw. In particular, Act 143 forces AbbVie to provide unlimited 340B discounts to unlimited commercial pharmacies that contract with covered entities. That is a drastic expansion of its obligations under the Program, which requires only that AbbVie extend 340B pricing an enumerated list of "covered entities" and no one else. 42 U.S.C. § 256b(a)(1); *AstraZeneca Pharms. LP*, 543 F. Supp. 3d at 60.

13

Act 143 can only achieve that obstruction by eliminating a right that the 340B statute confers: the right to place reasonable conditions upon 340B offers. Federal courts of appeals are clear that the federal 340B statute only requires manufacturers make a reasonable *offer* for purchase at the discounted price and preserves the ability of manufacturers to include other terms in that federally mandated "offer." *Novartis*, 102 F.4th at 460. Among those permissible terms is the right to limit 340B orders to one designated contract pharmacy per covered entity (as AbbVie's policy does). *See Novartis*, 102 F.4th at 461; Compl. ¶ 47. But Act 143 prohibits manufacturers from "restrict[ing] or prohibit[ing]" "the acquisition of a 340B drug by … a pharmacy that is under contract with a 340B covered entity." Act 143 § 2-2(a). That eliminates AbbVie's right to insist upon the reasonable conditions in its policy and effectively requires AbbVie provide access to 340B "pricing" to entities not enumerated by Congress. Compl. ¶¶ 139–141; 42 U.S.C. § 256b(a)(4).

This is problematic because when Congress creates a comprehensive framework like the 340B Program, the obligations that Congress *does not* include reflects its considered judgment. *Arizona v. United States*, 567 U.S. 387, 404–06 (2012); *see also Rapanos v. United States*, 547 U.S. 715, 752 (2006). The 340B Program's scope reflects a balance of the benefits and obligations Congress deemed would be sufficient to compel manufacturer participation without becoming so onerous that any are forced to withdraw. By ignoring Section 340B's *limits* on

14

obligations assumed by participating manufacturers, Hawaii "skew[s]" the finely wrought balance that Congress struck. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348 (2001).

### 2.    Act 143 Sets Up a Conflicting Enforcement Scheme.

Act 143 is also problematic for the independent reason that it creates a parallel enforcement scheme for conduct that falls under the banner of exclusive federal enforcement. *See Astra*, 563 U.S. at 120–21. The Supreme Court is clear: "Conflict is imminent when two separate remedies are brought to bear on the same activity." *Crosby*, 530 U.S. at 379. That remains true even without a "conflict in overt policy" between State and federal law, because "conflict in technique can be fully as disruptive to the system Congress erected." *Wisconsin Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 286 (1986).

There can be no dispute that the federal ADR scheme is the exclusive forum for "[c]laims by a covered entity that … a manufacturer has limited the covered entity's ability to purchase covered outpatient drugs at or below the 340B ceiling price." 42 C.F.R. § 10.21(a)(1). Further, that scheme obviously contemplates disputes over policies like AbbVie's—which Act 143 now purports to adjudicate, *see* Act 143 §§ 2-3, 2-4—and covered entities agree. When HHS solicited comments on the proposed scheme, covered entities "urge[d]" the agency to adopt the precise language that is now in § 10.21(a)(1) because: "When a manufacturer … sets

15

***conditions*** on accessing that price, it necessarily means a covered entity must pay more for the drug than the 340B ceiling price or otherwise incur potentially costly fees to meet the manufacturer's unilaterally imposed conditions, essentially depriving covered entities true access to the statutory price."  ECF No. 17-6 at 1 (emphasis added).  In other words, disputes about contract-pharmacy limitations— like those that AbbVie imposes and that Act 143 purports to outlaw—are just "type[] of overcharge[]" disputes, and it is "appropriate for an ADR panel to consider these claims."  *Id.* at 1–2.

Yet, Act 143 allows both covered entities and the Hawaii Attorney General to bring civil actions for alleged violations.  *See* Act 143 §§ 2-3, 2-4.  Any enforcement action brought under Act 143 will necessarily overlap with the federal scheme under § 10.21 and will implicate questions of federal law, including the manufacturer's defenses under the federal 340B Program.  *See* Act 143 §§ 2-3, 2-4.

The likely result is state courts resolving federal issues in conflict with the exclusive federal forum.  That parallel enforcement scheme and risk of conflicting adjudications is precisely what the Supreme Court rejected in *Astra*.  *See* 563 U.S. at 120; *Buckman*, 531 U.S. at 342–43, 349–50 (2001) (where an agency has "a variety of enforcement options" to "make a measured response," state law remedies "inevitably conflict" with the agency's authority to police violations consistent with its judgment); *see also Morrisey*, 760 F. Supp. 3d at 457 ("If private attempts to

16

enforce the 340B Program go against 'what Congress contemplated when it "centralized enforcement in the government,"' … then so too would public attempts to enforce it.").[2]

In addition to impeding the exclusive territory of § 10.21, certain defenses are *only* available under the federal statute, such as those related to "overcharges" or the definition of a "patient."  42 U.S.C. §§ 256b(a)(5)(B), (d)(1)(A), (D)(3)(A).  These would require a state court to decide issues within HRSA's exclusive domain.  *See* 89 Fed. Reg. 28,643 (Apr. 19, 2024).  There is simply no way to enforce Act 143 without running into a conflict with the 340B enforcement scheme.

## II.    ACT 143 CONSTITUTES AN UNCONSTITUTIONAL TAKING.

Act 143 effectuates an unconstitutional taking of private property.  And neither the Attorney General's public use argument nor the voluntary-participation doctrine save Act 143 here.

### A.    Act 143's Compelled A-To-B Transfer of Property Constitutes a Per Se Physical Taking.

Act 143 is a physical taking because "the government" is "appropriating [AbbVie]'s property for … a third party."  *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 148 (2021).  On its face, Hawaii's law requires AbbVie to acquiesce in another

---

[2]  Critically, HHS did not establish the federal ADR forum until after the Eighth Circuit's decision in McClain.  *Compare McClain*, 95 F.4th at 1138 (decided March 12, 2024), with 89 Fed. Reg. 28,643 (Apr. 19, 2024). The *McClain* court had no occasion to consider the conflicting enforcement mechanisms.

private party taking possession to its drugs at steeply discounted prices. *See* Act 143

§ 2-2(a). Under Act 143, when covered entities and contract pharmacies place orders

for 340B drugs and demand that AbbVie provide them at the 340B price so the

pharmacy can take possession to the drugs and dispense them to its customers,

AbbVie will have no choice but to comply, thus "los[ing] the entire 'bundle' of

property rights in the appropriated [drugs]—'the right to possess, use and dispose

of' them." *Horne v. Dept' of Agric.*, 576 U.S. 350, 361–62 (2015).

In contrast, the federal 340B statute requires only that AbbVie ***offer*** its drugs

to covered entities at the 340B price, subject to reasonable terms and conditions that

AbbVie may include. 42 U.S.C. § 256b(a)(1). The federal statute does not compel

a sale: Manufacturers may include reasonable terms in their offers of 340B-priced

drugs and may decline to sell where covered entities refuse to accept those terms.

*See Novartis*, 102 F.4th at 460; *Sanofi*, 58 F.4th at 703. As a result, the drugs

"offer[ed]" at the 340B price remain the manufacturers' property up to and until the

covered entity accepts the offer (and accompanying conditions) and completes the

sale. And if a covered entity rejects contract-pharmacy limitations, there is no sale

at the 340B price. Thus, Act 143 compels AbbVie to ***complete*** a transaction on

terms the State dictates and under conditions manufacturers do not agree with, and

under which they would not otherwise sell, on pain of civil and potentially criminal

penalties. *See* Compl. ¶ 116; Act 143 § 2-2. AbbVie will therefore provide

significantly more discounted drugs than it otherwise would if permitted to insist on its contract pharmacy terms because those "transactions [] would not take place but for the state's law."  Compl. ¶ 116.

Moreover, despite the Attorney General's position, Act 143 is not for public use because it intends to confer benefits on private entities.  Mot. at 20; *See Kelo v. City of New London, Conn.*, 545 U.S. 469, 490 (2005) (Kennedy, J. concurring) ("[T]ransfers intended to confer benefits on particular, favored private entities, and with only incidental or pretextual public benefits, are forbidden by the Public Use Clause.").  Here, AbbVie far from "gloss[es] over the public purpose" purported by the Attorney General.  Mot. at 20.  AbbVie has sufficiently alleged the opposite: Act 143 will only serve to benefit contract pharmacies and covered entities.  *See* Compl. ¶ 42 ("instead of using manufacturers' deeply discounted drugs to treat the indigent and uninsured patients … commercial contract pharmacies sell manufacturers drugs at regular prices to pharmacy customers … , pocketing the difference"); *see also id.* at ¶¶ 76, 77.  The lack of public use is even more apparent in Hawaii, as covered entities in Hawaii "provide charity care at numbers well below the national average—nearly a full *2% lower*, on average, in 2022." *Id.* at ¶ 78 (emphasis added).

### B.    The Voluntary Participation Doctrine Does Not Apply.

The Attorney General cannot find refuge for Act 143's taking in the voluntary participation doctrine.  AbbVie's voluntary participation in a ***federal*** program does

not preclude a takings claim against a *state* law.  *See* Mot. at 19.  Manufacturers that seek coverage for their life saving medications under Medicaid and Medicare Part B are *required* to join the federal 340B Program.  *See* 42 U.S.C. § 256b(a)(1); 42 U.S.C. § 1396r-8(a)(5)(A).  If they do not agree to the demands of the 340B Program, participation in Medicaid and Medicare Part B is revoked.  *See* 42 U.S.C. § 256b(a)(1); 42 U.S.C. § 1396r-8(a)(5)(A).  Hawaii is not (and never was) a part of that exchange.

Neither may Hawaii impose new *state* conditions on AbbVie's participation in a *federal* program and call it a voluntary exchange.  True, "[a] demand for personal property would not be a taking, ... if it involved a voluntary exchange for a governmental benefit."  *Valancourt Books, LLC v. Garland*, 82 F.4th 1222, 1232 (D.C. Cir. 2023).  But no such exchange exists "if the purported 'benefit' is illusory"—i.e., if the government offers nothing that its counterparty does not already have.  *Id.*  Hawaii cannot rely upon Medicaid and Medicare coverage, as Congress already offered that to AbbVie in exchange for participation in the 340B Program.  So Hawaii offers nothing and any "purported benefit" is therefore illusory.  *See also Virginia Hosp. & Healthcare Ass'n v. Roberts*, 671 F. Supp. 3d 633, 666 (E.D. Va. 2023) (explaining that "*state law* [ ] requirements have no bearing on whether provider's participation in Medicaid and Medicare is voluntary as a matter of *federal* law").

20

While the Attorney General suggests that AbbVie could simply "avoid selling discounted drugs by … *leaving the 340B program*," Mot. at 22, there is no one-state withdrawal from 340B, Medicare, or Medicaid. It is an all-or-nothing, national proposition. Moreover, Medicaid and Medicare are important, critical-access programs for some of the poorest and most at-risk patients in the United States. *See Astra*, 563 U.S. at 120. In that way, the Attorney General turns traditional federalism principles on their head: No *state* is permitted to tell the *federal* government what drugs it should cover under federal health insurance programs. But the Attorney General's argument amounts to just that.

### C.    Although the Regulatory-Takings Doctrine Does Not Apply, Even If It Did, AbbVie's Allegations Are Sufficient.

To be clear: Because Act 143 is a physical appropriation of AbbVie's property—it requires that AbbVie transfer its personal property to someone else against its will—the regulatory-takings doctrine does not apply. *E.g.*, *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982). "[W]hen there has been a physical appropriation," courts "do not ask . . . whether it deprives the owner of all economically valuable use of the item taken." *Horne*, 576 U.S. at 363 (citation and internal quotations omitted).

Even assuming that this case does not involve a physical appropriation, AbbVie pleads in the alternative that Act 143 effectuates a partial regulatory taking. *See Penn Central Transp. Corp. v. City of New York*, 438 U.S. 104, 124 (1978)

21

(laying out a flexible three-factor test for a regulatory taking: (1) the economic impact of the regulation, (2) the extent to which the regulation has interfered with investment back expectations, and (3) the "character of the governmental action."). AbbVie's allegations state a plausible alternative claim that Act 143 effectuates a regulatory taking.  That is all that is required at this stage.  *See Iqbal*, 556 U.S. at 678.

AbbVie has plausibly pleaded that: (1) Act 143 "imposes significant financial losses on AbbVie and other manufacturers," (2) the regulation "interferes with drug manufacturers' reasonable investment backed expectations," and (3) Act 143 "serves no valid government purpose because it deprives manufacturers of the full use and control of their property on a continual basis for the commercial benefit of private parties."  *See* Compl. ¶ 159.  At this early stage, the Court must accept these factual allegations as true.

## III.   ACT 143 VIOLATES THE DORMANT COMMERCE CLAUSE.

AbbVie has sufficiently pleaded that Act 143 violates the Dormant Commerce Clause.  A state statute may violate the dormant Commerce Clause doctrine if it "directly regulate[s] out-of-state transactions by those with ***no*** connection to the State," or if it "regulates even-handedly to effectuate a legitimate local public interest," when "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits."  *Nat'l Pork Producers Council v. Ross*, 598

U.S. 356, 376 n.1, 391 (2023) (Sotomayer, J. concurring).

***First***, Act 143 discriminates against interstate commerce. It regulates out-of-state transactions with little or no connection to Hawaii. The central aim of Hawaii's law is to privilege covered entities and pharmacies over out-of-state manufacturers by forcing manufacturers to provide drugs at significantly reduced prices to hospitals and pharmacies that would not otherwise be entitled to reduced prices under federal law. That significantly burdens out-of-state manufacturers like AbbVie for the direct benefit of in-state entities by compelling AbbVie to extend them bargain basement pricing. Compl. ¶ 165. To be clear, that does not benefit 340B patients, it serves only to profit for commercial pharmacy chains. Compl. ¶ 166. Hawaii's use of a federal program to benefit in-state covered entities and contract pharmacies at the expense of out-of-state manufacturers like AbbVie, would "amount[] to 'simple economic protectionism'" that the Supreme Court affirmed to be an illegitimate legislative interest. *Nat'l Pork Prods.*, 598 U.S. at 372.

***Second***, Act 143 effects extraterritorial control of commerce occurring entirely outside the boundaries of Hawaii. The Attorney General acknowledges that "Act 143 may impose burdens on manufacturers such as Plaintiffs," and "there are no pharmaceutical manufacturers based in Hawaii." Mot. at 23 & n.15. Moreover, covered entities often enter contract pharmacy arrangements with pharmacies located outside the state. In practice, Act 143 permits the Attorney General to

23

regulate a Hawaii covered entity that purchases drugs from a California wholesaler, that then provides the drugs to a pharmacy in Texas. Thus, the sale could take place entirely outside of Hawaii, yet still be under the guise of Act 143. This is the exact type of extraterritorial application the dormant commerce clause seeks to prohibit. *See Sam Francis Found. v. Christies, Inc*., 784 F.3d 1320, 1323 (9th Cir. 2015) (finding state statute that "regulates a commercial transaction that 'takes place wholly outside of the State's borders'" violates the dormant Commerce Clause); *see Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989).

This extraterritorial reality is expressly confirmed by Act 143, which bars ***all*** "manufacturer[s]" from "deny[ing], restrict[ing], or prohibit[ing], either directly or indirectly, the acquisition of a 340B drug by, or shipping or delivery of a 340B drug to, a pharmacy that is under contract with a 340B covered entity . . . [.]" Act 143, § 2-2(a). The statute places no geographic limits on "manufacturer" nor "pharmacy." *See* Act 143, § 2-1; Haw. Rev. Stat. § 328-112; Act 143, § 2-1; Haw. Rev. Stat. § 461-1. The scope of prohibited conduct under Act 143 is unbounded.

***Third***, Act 143's burden on interstate commerce is excessive in relation to putative local benefits. Courts strike down "nondiscriminatory burdens on commerce … that … clearly outweigh the benefits of a state or local practice." *Dep't of Revenue of Ky. v. Davis,* 553 U.S. 328, 353 (2008). Act 143 will benefit Hawaii covered entities and contract pharmacies at the expense of out-of-state

24

manufacturers, which is exactly why courts have rejected other motions to dismiss dormant Commerce Clause claims. *See Novartis Pharms. Corp. v. Bailey*, 2025 WL 489881, at *5–7 (W.D. Mo. Feb. 13, 2025) (declining to dismiss a dormant commerce clause claim on the grounds that "the goal of [the state 340B statute] is to protect in state industries … by forcing out-of-state manufacturers to give them a steep discount"); *see also PhRMA v. Bailey*, 2025 WL 644281, at *6 (W.D. Mo. Feb. 27, 2025).

Act 143 poses a substantial extraterritorial economic burden on the 340B program and the national prescription drug industry as a whole by compelling manufacturers to sell discounted drugs nationwide based on Hawaii's mandates. Compl. ¶¶ 168, 175. The Attorney General is incorrect that Act 143 "preserv[es] access to affordable healthcare for rural residents." Mot. at 26. Contract pharmacies do not pass on 340B's discounted prices to individual patients—payors (customers or their insurance) generally pay full, commercial price. Compl. ¶¶ 7, 63. Act 143 does not affect the prices patients pay or patients access to medication. *See id.* at ¶¶ 75–76, 78, 177. Even if contract pharmacies did begin passing 340B discounts to patients, those discounts still wouldn't reach patients in "poor" or "rural" areas: More than half of Hawaii's contract pharmacies are located in affluent neighborhoods. Compl. ¶ 80.

## IV.    ACT 143 IS UNCONSTITUTIONALLY VAGUE.

Act 143 is unconstitutionally vague because it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)).  Courts apply an even higher level of scrutiny if a law imposes criminal sanctions and implicates constitutional rights.  *United States v. Davis*, 588 U.S. 445, 451 (2019).

Act 143 defines a "340B drug" as a drug "purchased by a 340B covered entity through the federal 340B pricing program ... and ... ***dispensed*** by a pharmacy."  Yet, Act 143 purports to prohibit manufacturers from "deny[ing], restrict[ing], or prohibit[ing] … acquisition of a 340B drug by, or shipping or delivery of a 340B drug to, a pharmacy" who has contracted with a covered entity.  Act 143 § 2-2(a). Act 143 provides no notice, then, as to what conduct the law actually proscribes, because the definition of a "340B drug" requires that it "is dispensed by a pharmacy," which would necessarily take place ***after*** acquisition, shipping, or delivery.  Accepting defeat on the vague workings of Act 143, the Attorney General merely argues that "Plaintiffs have reason to know what the prohibited conduct is." Mot. at 28.

26

In practice, contract pharmacies maintain a single, commingled inventory, and use post-dispensing algorithms—unknown and inaccessible to manufacturers—to determine 340B eligibility after the fact.  Compl. ¶ 66. Manufacturers have no way to know whether a dispensed drug qualifies as a "340B drug" under the statute, creating unacceptable ambiguity about when compliance is required.  And the lack of scienter requirement exacerbates this problem.   Not only is it unclear how manufacturers might violate this provision, but these violations can occur without intent, and theoretically to all pharmacies nationwide if a Hawaii resident is provided drugs or pharmacy care at that pharmacy.  Compl. ¶¶ 183-186.  AbbVie's Due Process claim is sufficiently pleaded.

## CONCLUSION

For the foregoing reasons, the court should deny Defendant's Motion to Dismiss.

DATED: Honolulu, Hawai'i, September 29, 2025.

/S/ CLAIRE WONG BLACK
CLAIRE WONG BLACK
KEONI M. WILLIAMS

MATTHEW S. OWEN, P.C., *pro hac vice*
MEREDITH M. POHL, *pro hac vice*

*Counsel for Plaintiffs*
ABBVIE INC., ALLERGAN, INC.,
DURATA, THERAPEUTICS, INC.
ABBVIE PRODUCTS LLC,
PHARMACYCLICS LLC, AND
ALLERGAN SALES, LLC

28